754 P.2d 522

**Jacinto LOPEZ, Petitioner–Appellee,**

v.

**NEW MEXICO BOARD OF MEDICAL EXAMINERS, Respondent–Appellant.**

**No. 17389.**

Supreme Court of New Mexico.

May 18, 1988.

Hal Stratton, Atty. Gen., Andrea R. Buzzard, Asst. Atty. Gen., Santa Fe, for respondent-appellant.

Bosson & Canepa, Richard C. Bosson, Santa Fe, for petitioner-appellee.

## OPINION

SOSA, Senior Justice.

On January 29, 1986 the New Mexico Board of Medical Examiners (Board), pursuant to the authority granted it in NMSA 1978, §§ 61–1–1 through –33 (1986 Repl.) ("Uniform Licensing Act") revoked the license to practice medicine of Dr. Jacinto Lopez (Lopez). Lopez attempted through his attorney to file a petition for review pursuant to Section 61–1–17 of the Act, but failed in several particulars to conform his pleadings to the requirements of that section. The Board moved to dismiss the petition. Lopez, meanwhile, alleged that the Board had failed to observe the time requirement of Section 61–1–13(B) whereby the Board was to render its decision against Lopez within ninety days after the hearing. On July 10, 1987 the trial court ruled against the Board as to the issue of the time limit, but granted the Board's motion to dismiss as to Lopez's failure to conform his pleadings to Section 61–1–17. The matter proceeded to a bench trial, and the trial court essentially repeated in its judgment its earlier ruling on the motion to dismiss, restoring Lopez's license to practice medicine. The Board appeals, and we affirm.

FACTS

There is no dispute as to the substantive nature of Lopez's misfeasance in performing the act which led to the revocation of his license. On July 7, 1983 Lopez amputated his patient's leg in an office that did not meet proper licensing standards, with

no assistance from a trained health professional, and without being certified in the use of anesthesia. There is little doubt that Lopez's conduct constituted gross negligence as alleged by the Board. However, the patient suffered no unexpected or damaging medical result, and voiced no complaint. Further, this was Lopez's first disciplinary appearance since his licensure in 1968.

■ The issue before us, however, concerns not Lopez's medical conduct, but the post-operative conduct of both Lopez and the Board in proceeding with the investigation and findings under the Uniform Licensing Act. First, we agree with the trial court that Lopez's petition under Section 61–1–17 was defective. It was not filed within twenty days, did not bear the proper heading, and failed to state all exceptions to the Board's ruling as required by law.

The more important issue, however, is not Lopez's failure to comply with Section 61–1–17, but the Board's failure to comply with Section 61–1–13. Whereas Lopez's negligence in regard to filing his pleading goes to the issue of his response to the Board's complaint, the Board's negligence in not having rendered its decision within ninety days relates to the more important issues of jurisdiction, due process of law and equal protection of the law. Thus, whatever errors Lopez may have made are secondary to the more basic issues raised by the Board's delay in rendering its decision. If the Board possessed no jurisdiction *ab initio* to render its decision, everything which the Board did following that decision is void and of no effect. Therefore, it does the Board little good to argue that Lopez filed faulty pleadings if the Board itself never possessed the requisite jurisdiction to proceed with its decision. Lopez's error is derivative in nature, while that of the Board is foundational.

Yet, the Board argues that Lopez waived the Board's requirement to render its decision in ninety days, and thereby conferred jurisdiction on the Board in spite of its delay of nearly a year and a half in making a decision. It is true that Lopez made certain waivers in this respect. The time limit was first extended from the original date of September 22, 1984 to November 19, 1984. The second waiver date was sometime in May, 1985. Lopez contends that he made no further waivers. The Board made no decision in May, 1985, but instead considered Lopez's case at a meeting in November, 1985, and eventually revoked Lopez's license on January 29, 1986. Whereas the Board in essence argues, "once waived always waived," the trial court in its finding of facts (# 33) concluded, "Neither Lopez or his counsel assented in any way expressly or implicitly, to a continuance of this matter beyond the May, 1985 regularly scheduled Board meeting, nor to a delay until the November, 1985 regularly scheduled Board meeting."

## LEGAL ISSUES INVOLVED

■ We find that there is adequate substantial evidence in the record to support the trial court's conclusion. Further, on appeal, the evidence is to be viewed in the aspect most favorable to the action of the court which is being appealed. *Jones v. New Mexico State Racing Comm'n*, 100 N.M. 434, 671 P.2d 1145 (1983). Every reasonable intendment and presumption will be resolved against appellants in favor of proceedings in the trial court. *Romero v. Sanchez*, 86 N.M. 55, 519 P.2d 291 (1974). We are thus bound by the trial court's conclusion that no further waivers on Lopez's part took place after May, 1985, and we conclude that more than ninety days passed after May, 1985 before the Board reached its decision.

Each party urges us to apply *Foster v. Board of Dentistry*, 103 N.M. 776, 714 P.2d 580 (1986) to its respective position and to conclude that *Foster* either does or does not stand for the proposition that the ninety day time limit in Section 61–1–13 is jurisdictional. In deciding this question, it seems to us that the language in *Foster* could not be clearer:

The Board further argues that under Section 61–1–13(B) the requirement that the decision be signed within ninety days after the completion of the hearing is merely procedural, not jurisdictional, and to argue that the Board lost jurisdiction

over Foster merely for failing to sign the decision within ninety days leads to the unintended result of having to start the proceedings against Foster all over again. The Board argues that such unnecessary duplication was not intended by the legislature for the mere failure by the Board to sign its decision within the ninety day time period prescribed by Section 61–1–13(B). We disagree. 103 N.M. at 777, 714 P.2d at 581.

▐ Although it is true that Chief Justice Riordan could have clarified the issue if he had written, "the ninety day time limit is jurisdictional," his failure to do so does not detract from the obvious conclusion that this is what he intended to say. We therefore hold that the ninety day time limit imposed by Section 61–1–13 is expressly jurisdictional. "Because the Board [in the case before us] failed to take action within the required ninety day period [taking into account Lopez's two waivers], its decision is void and must be reversed. To rule otherwise would ignore the plain language of Section 61–1–13(B)." *Id.* at 777, 714 P.2d at 581. We thus conclude that the trial court was correct to rule in its judgment, "the proceedings of the New Mexico Board of Medical Examiners below are void, [and] of no force and effect * * *." (R.P. 216).

▐ Finally, in addition to the jurisdictional requirements imposed by Section 61–1–13, we hold, as the trial court likewise adjudged, that the Board violated certain constitutional requirements as well. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), where the court held that procedures such as those in effect here constitute a vital property right, the deprivation of which is a deprivation of due process of law under the Fourteenth Amendment to the United States Constitution. 455 U.S. at 430–31, 102 S.Ct. at 1155. In *Logan,* the factfinding tribunal failed to act within the statutorily required 120 day period. Apparently through inadvertence, the commission's representative scheduled the conference five days *after* expiration of the statutory period. *Id.* at 426, 102 S.Ct. at 1152. The

Court held that "[a] system or procedure that deprives persons of their claims in a random manner * * * necessarily presents an unjustifiably high risk that meritorious claims will be terminated." 455 U.S. at 434–35, 102 S.Ct. at 1157.

Further, in an opinion separate from that of the majority, four members of the Court addressed Logan's equal protection claim. The Court wrote that to treat persons whose claims are processed within the 120 day period differently than persons whose claims are not processed within that period and finally terminated, amounts to a denial of equal protection under the Fourteenth Amendment.

> "So far as the State's purpose is concerned, every * * * claimant's charge, when filed with the Commission, stands on the same footing. Yet certain randomly selected claims, because processed too slowly by the State, are irrevocably terminated without review. In other words, the State converts similarly situated claims into dissimilarly situated ones, and then uses this distinction as the basis for its classification. This, I believe, is the very essence of arbitrary state action."

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 442, 102 S.Ct. 1148, 1161, 71 L.Ed.2d 265 (1982) (Blackman, J. separate opinion).

The judgment of the trial court is affirmed in its entirety.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and WALTERS and RANSOM, JJ., concur.

STOWERS, J., Dissents.

STOWERS, Justice, dissenting.

I respectfully dissent from the majority opinion affirming the trial court's judgment that the New Mexico Board of Medical Examiners (Board) decision to revoke Lopez' medical license was void, and ordering restoration of his license with its attendant privileges. The majority affirm on the grounds that the Board lost subject matter jurisdiction over Lopez by failing to "render and sign" its decision within the ninety-day time period prescribed by NMSA 1978,

Section 61–1–13(B). Before reaching this issue, the Court must first consider whether Lopez properly sought judicial review of the Board's decision in compliance with NMSA 1978, Section 61–1–17.

The procedure for obtaining judicial review is set out as follows:

> In order to obtain such review such person *must within twenty days after the date of service of the decision* * * * file with the court a petition for review, a *copy of which shall be served on the Board's secretary, stating all exceptions taken to the decision* and indicating the court in which the appeal is to be heard. The *court shall not consider any exceptions not stated in the petition.* [Emphasis added.]

NMSA 1978, § 61–1–17.

It is undisputed that Lopez failed to comply with these requirements. As the majority points out, he did not file within twenty days, did not list *any* exceptions to the Board's decision, and improperly headed his petition. Further, he did not serve the Board with a copy of his petition until June 24, 1986, over four months after he filed.

The statute *clearly* states the consequences of failure to comply with the requirements for obtaining judicial review as follows:

> Failure to file such petition for review *in the manner and within the time stated shall operate as a waiver* of the right to judicial review and *shall* result in the decision of the board becoming final; except that for good cause shown, within the time stated, the judge of the district court may issue an order granting one extension of time not to exceed sixty days. [Emphasis added.]

NMSA 1978, § 61–1–17.

By failing to comply with these requirements, Lopez waived his right to judicial review and the Board's decision to revoke his medical license became final. According to the statute, Lopez could have sought an extension of the time allotted to file his petition for review by showing good cause. However, there is no evidence that Lopez either sought or received such an exten-sion. In light of these facts, this issue is dispositive and the district court should be reversed and the Board's decision affirmed.

Since the majority did not dispose of the case on this first issue, and proceeded to consider the question of the Board's compliance with NMSA 1978, Section 61–1–13(B), I wish to make the following observations. The majority take the position that the Board lost subject matter jurisdiction over Lopez, due to its failure to comply with NMSA 1978, Section 61–1–13(B). I disagree.

Under NMSA 1978, Section 61–1–13(B), Board decisions "must be rendered and signed within ninety days after the hearing." The trial court held, and the majority agree, that this ninety-day time limit may be waived by a licensee.

Lopez waived his right to receive the Board's decision within ninety days, shortly after the Board heard his case on June 22, 1984. After that hearing, Lopez' attorney and an attorney representing the Board discussed holding a special meeting in order to meet the ninety-day time limit. During that discussion Lopez' attorney, acting for Lopez, agreed to let the Board consider Lopez' case at its regularly scheduled meeting on November 19, 1984. The ninety days was due to expire on or about September 22, 1984. It is undisputed that the actions of Lopez' attorney constituted a waiver of the Board's ninety-day time limit.

The general rule regarding a waiver is set out in 92 C.J.S. Waiver p. 1069 (1955), as follows:

> It is generally recognized that, if a person in possession of any right waives that right, he will be precluded thereafter from asserting it or from claiming anything by reason of it. That is, *once a right is waived it is gone forever,* and it cannot be reclaimed or recaptured, and the waiver cannot be retracted, recalled, or expunged, even in the absence of any consideration therefor or of any change of position by the party in whose favor the waiver operates. [Emphasis added.]

This rule is similarly expressed in 28 Am. Jur.2d Estoppel and Waiver § 156 (1966), which reads:

One who intentionally relinquishes a known right cannot, without consent of his adversary, reclaim it, for *it is well settled that a waiver once made is irrevocable,* even in the absence of consideration, or of any change in position of the party in whose favor the waiver operates. * * * It is held that once a waiver of the provisions of a statute is made in a pending case, it is waived for the purposes of all further proceedings in the same action. [Emphasis added.]

See also *Bordacs v. Kimmel,* 139 So.2d 506, 507 (Fla.Dist.Ct.App.1962); *Hader v. Eastman,* 124 Ga.App. 548, 184 S.E.2d 478, 479 (1971); *State v. Independent School Dist. No. 810, Wabasha Co,* 250 Minn. 237, 109 N.W.2d 596, 602 (1961); *Rosengardt v. Muhlfelder Company,* 12 Misc.2d 142, 177 N.Y.S.2d 215 (1958); *Pash v. Wagner,* 2 Misc.2d 822, 151 N.Y.S.2d 411 (1956); *MacKnight & Hoffman, Inc. v. Programs for Achievement in Reading, Inc.* 96 R.I. 345, 191 A.2d 354 (1963).

The court in *Davidson v. State,* 249 Ind. 419, 233 N.E.2d 173, 176 (1971), faced issues similar to those in the case at bar. There, Davidson executed a written waiver of his right to a jury trial and later sought to retrieve it. That court held that Davidson had no constitutional right to withdraw, whenever he saw fit, his written waiver of a jury trial where that waiver was made "voluntarily, intentionally and knowingly." *Davidson,* 233 N.E.2d at 176.

Lopez, like Davidson, now seeks to arbitrarily withdraw his waiver of the Board's ninety-day time limit. According to the general rule, Lopez' waiver was permanent and irrevocable at the time of the discussion noted above. He lost his right to set time constraints on the Board's decision at that time.

At that point, under the general rule, Lopez could have reclaimed any right he had waived to receive the Board's decision within ninety days, by obtaining the Board's consent. There is no evidence Lopez even attempted to do this. In fact, Lopez' actions indicate indifference to the timing of the Board proceedings. Lopez did not file proposed findings of fact and

conclusions of law in time for the November 1984 meeting; when notified of the Board's intent to reconsider and delay his case, he did not object; and he did not object to the pending delay in May 1985. Further, Lopez' attorney did not cooperate or communicate with the Board to hasten the proceedings.

Once Lopez irrevocably waived this time period, the Board was only required to render its decision "as soon as practicable" under the statute. NMSA 1978, § 61–1–13(A). There is no evidence the Board abused this limitation. After the waiver the Board was ready to consider Lopez' case on November 19, 1984. Lopez failed to file requested findings of fact and conclusions of law at that time, so the Board delayed its decision to consider those findings. The trial court found that this delay was proper. Before the May 1985 meeting, the Board was unsuccessful in communicating with Lopez regarding this delay. Lopez did not object. At the May 1985 meeting the Board had three new members, required by statute to familiarize themselves with Lopez' case before deciding. The trial court found that the Board's inability to render a decision in May 1985 was unavoidable. The delay between May 1985 and November 1985 was due to the new Board members' lack of familiarity with Lopez' case, lack of money for Board travel, and failure of Lopez to object. Thus, the Board decided Lopez' case "as soon as practicable," after May 1985.

The majority opinion is based on the notion that Lopez did not "expressly or implicitly" waive the ninety-day period after May 1985. As noted above, once the court has decided that the ninety-day provision may be waived and that it has been waived, the waiver is permanent and the only question left is whether the Board acted "as soon as practicable."

A waiver may be demonstrated "by acts or conduct indicating an intention not to raise such objections or exceptions." 73A C.J.S. Public Administrative Law and Procedure § 142 (1983). Lopez' inaction from May 1985 until February 1986 can be seen

as a waiver under this definition. The majority rely on *Foster* for the proposition that the ninety-day time period must be met by the Board, or its decision voided. However, in *Foster* there was no waiver as in the present case.

For the foregoing reasons, I would reverse the trial court and reinstate the decision of the Board revoking Lopez' medical license.